Number 191390, United States v. José Luis Vaello-Madero. May it please the Court, Mike Shee for the United States, and I'd like to reserve three minutes for rebuttal. Yes. The District Court ignored controlling precedent to invalidate a federal statute that limits eligibility for supplemental security income benefits. In Califano v. Torres, the Supreme Court upheld that same statute because Congress' choice was, quote, rational and not invidious. And in Harris v. Rosario, the Supreme Court reaffirmed Califano's holding and extended it to analogous benefits legislation, the AFDC, because those holdings control this case. Do both cases rely on the insular cases? They do not, Your Honor. Do they not? Didn't they rely on the territorial clause? Those are two different questions. So the insular cases... Help me with the two different questions, please. They are different questions. The Court noted in Califano that, of course, Congress may treat the territories different than Congress treats the states. That's what the territories clause provides. The insular cases are not relevant because they just answer the question whether a particular right extends of its own force to the residents of a territory. Don't the insular cases also hold that some of the insular cases, it all depends how you define the insular cases, but define them broadly. Don't they also hold that Congress has plenary power over the territories? It's possible that that's true, Your Honor, but, you know, the question presented by the insular cases is completely irrelevant because those cases go solely to the question whether a particular right asserted by an individual here, the defendant, extends to that defendant and may be asserted by the defendant. There has never been any dispute in this litigation or in any other litigation that the due process guarantees of the Constitution would apply with full force to the residents of Puerto Rico. Just as they do... I thought it was the insular cases that allow Congress to legislate differently when it involves one of the territories. No, Your Honor. You know, it's possible that the insular cases may have said something of that sort, but that principle has been reaffirmed by the Supreme Court multiple times, including most recently in its decision in Sanchez Valle. No, Your Honor. All the Supreme Court held was, you know, setting aside whatever the insular cases said. It was black letter law that under the territories clause, Congress has constitutional authority to make different rules regarding the governance of the territories than it does with respect to the governance of the states. And, you know, that holding, you know, or, you know, what the insular cases actually stand for, which is whether the due process guarantees of the Constitution extend to Puerto Rico. Neither of those has any bearing on this case. The only question in this case is whether applying, you know, ordinary equal protection principles under ordinary rational basis review in the same way that rational basis review would be applied in any of the states or in the District of Columbia, this statute was rational. And as to that question... Assuming the insular cases have something to do with this case, would you say that we are basically involved in deciding whether a geographic classification can be faulted for any reason? I don't think the first part of Your Honor's question relates to the second part of Your Honor's question. So the second part of... I'm sorry, Your Honor. With respect to the second part of Your Honor's question, as to how equal protection operates, you know, all we're saying is that the way Supreme Court thinks about, you know, equal protection challenges to social benefits legislation is the same here in Puerto Rico as it is in any of the 50 states and the District of Columbia. The Supreme Court says social benefits legislation is subject solely to rational basis review. And, you know, there might be some reason to go beyond rational basis review in certain instances, but as to those, you know, none of those factors are present here. And moreover, we know that equal protection principles, you know, require rational basis when, you know, arguments of the sort that defendant is advancing here are advanced. And the reason we know that is, you know... If a geographical classification had a discriminatory purpose, what would be the standard of review? If defendant could prove that a geographic classification was, in fact, a disguise for some sort of impermissible animus, whether racial or otherwise, then of course the standard of review would be higher. But the problem for defendant... What would it be? I think, for example, just to take, you know, for hypothesis's sake, you know, if it were a racial classification, then of course strict scrutiny would apply if it were, you know, for example, a gender-based, sex-based classification, maybe some lesser standard would apply. But the fact remains that no evidence has been introduced to demonstrate that this particular classification was the result of, you know, any sort of discriminatory animus. And, you know, just to return to the question of what the applicable standard of review is, Your Honor, I think this Court's decision in Rios-Rivera is quite helpful. In Rios-Rivera, the Court confronted a question whether the Mann Act was constitutional on equal protection grounds as applied to individuals in Puerto Rico. The Court held that when presented with the following equal protection claim, one predicated on the different treatment of conduct occurring wholly within Puerto Rico from that that occurs within one of the 50 states, that Supreme Court precedent requires applying rational basis review as opposed to heightened scrutiny. I'd like to go back. I'm sorry to interrupt. Oh, no. No problem, Your Honor. I'd like to go back and ask you whether a discriminatory purpose can be established by reference to the insular cases. No, Your Honor. So, you know. Why is that? Those cases were handed down by the Supreme Court a very long time ago. Certainly. It's still being cited. Well, Your Honor, the question is not what the Supreme Court might have said a very long time ago in the insular cases. The question when evaluating the rationality or not or the purpose or not of a congressional enactment is to look at that particular enactment. There is no evidence that this. I need for you to focus on what Judge Toya is trying to ask you here. Clearly, he's saying that the language from those earlier cases, which are still on the book, which talk about alien races and different cultures and not incorporating them into mainstream USA, that's still on the books. So, we've got these cases which set forth this notion that the citizens of Puerto Rico are like these, you know, hothouse flowers down here, and they deserve to be treated differently. And if that is still on the books, there's this recognition in our case law that they're looking at the citizens of Puerto Rico differently, and that implicitly is some kind of ethnic or racial bias. And I don't want to misquote what Judge Toya is trying to say, but... No, you're quoting exactly what I'm asking. And the next question that I would ask you is, are you familiar with the Arlington Heights case? I am, Your Honor. Are you familiar with the factors whereby you can establish discrimination? I am, Your Honor. And the answer to both of Your Honor's questions is that the way the Supreme Court has applied the disparate impact versus discriminatory purpose inquiry requires evidence that is far more substantial than the fact that a very long time ago, the Supreme Court handed down certain decisions, and then an entirely separate branch of the United States government, namely Congress, many decades later, had a classification based on geographic residency. And one further, I think, helpful point to emphasize, Your Honor, is that the particular classification here really, truly is geographical. And the reason we know that is because Defendant used to live in New York. And while Defendant lived in New York, Defendant was able to receive the SSI benefits in question. It wasn't until Defendant moved to Puerto Rico that the benefits, or rather that his eligibility for the benefits lapsed. And so it can't have anything to do with anything except the source of where the individual resides. And that question, you know, must be evaluated on rational basis grounds. I'm sorry. Finish your statement, because I'm going to go into the cases that you seem to like more than I. I was going to discuss the particular rational bases that the Supreme Court examined in Califano. I'm sure you are. So with respect to Califano, there are at least two rational bases that the Supreme Court advanced. And the first is the unique tax status of the residents of Puerto Rico. So then as now, the residents of Puerto Rico did not, and still do not, pay federal income tax on income earned within Puerto Rico into the Treasury's general fund. Before you go further, you're talking about only two of them, because the original cases you cite had three of them. I'm wondering why you dropped one of them. Well, we didn't drop it, Your Honor. It's just entirely unnecessary given what, you know, we have in this case, which is those two grounds. Well, the fact that this doesn't end in the second case, it seems to imply that all three of them have to be in this case, if you're going to rely on those cases. That doesn't seem like the best reading of what the Supreme Court held. And the reason is because the Supreme Court's cases don't talk in terms of rational bases, plural. The Supreme Court's cases talk only in terms of the rational basis, singular. And here, you know, the fact that the Supreme Court may have had several alternative reasons, several alternative bases for upholding the challenge statute does not mean that the government needs to prevail as to every single one of those bases. The only question is whether the court can come up with a rational basis, singular. And here, there are at least two. So to return to the first one. I won't argue about the semantics, which I don't agree with you, but that's beside the point, because you talk about the fact that the one item is that you say that Puerto Rican people contribute to the federal treasury, is that correct? That's right. No, no, no, Your Honor. So to be very clear, there is an income tax exception under the Internal Revenue Code for income earned within Puerto Rico. So no tax is paid on that. Oh my God, but I have to pay federal tax because I'm a federal employer. Yeah, that's true, Your Honor. Well, there's quite a few people here that do pay federal income tax, but leave that aside. As I understand it, Puerto Rico paid more money into the federal treasury than at least one, two, three, four, five, six states, which are Vermont, Wyoming, South Dakota, North Dakota, Montana, and Alaska. How does that fit into your argument? It doesn't, Your Honor. And the reason is because under rational basis review, the government is not required to draw lines with exact mathematical precision. That might be an issue if the standard of review were different, but the standard of review is what the standard of review is. But how is that rational? I mean, even under rational review, how is that rational? It's rational, Your Honor, because Congress could reasonably think, rationally think, that if we're paying money out of the general fund, then in general, we should have the money go to places where we know money to the general fund comes in, right? But if we know that money to the general fund is coming in from Puerto Rico, and in fact, coming in at a greater pace than these other states the judge just mentioned, how is that rational? I see my light is up, if you don't mind my answer. That was so fast. So it's rational, Your Honor, for two reasons. So first of all, the Supreme Court has already held that it is. And second of all, in applying rational basis review, courts do not look to the facts on the ground with the level of detail that Your Honors are positing. In truth, if you look at Califano, and again in Harris, Your Honor, the Supreme Court makes no mention of statistics at all. And that's because, as the Supreme Court emphasized in FCC v. Beach Communications, a legislative choice may be based on rational speculation that's unsupported by evidence or empirical data. So that's the reason I'm answering Your Honor's questions in the way that I am, not because I doubt the accuracy of the statistics that Your Honor is positing, but instead, because those statistics are not relevant to how the Supreme Court and other courts, including this one, have deployed the rational basis standards. Just can I get one point of clarification on this? So Califano talked about payment of income tax? I think so, Your Honor, yes. And Judge Turay is talking about revenue to the General Treasury from a geographic location. Do you know if that argument was made in Califano? I don't, Your Honor. But that's the only clarification I need. Of course. Thank you. No, no, no, no. Oh, no, no, no, no. That dissatisfies me. Okay. You dropped, or the government has apparently dropped the second point in Califano and Harris, cost savings. Oh, no, no, Your Honor. We have not dropped that point at all. We articulated it below, and we continue to articulate it here. Well, how about Moreno? What does that do? The Moreno case is due to that argument. I'm sorry. So you're referring to Department of Agriculture versus Moreno? Right. So that case only underscores why we're right for two reasons. So first of all, Moreno demonstrates that, you know, with respect to these ideas of animus perhaps necessitating a higher standard of review, Moreno is the case from which that principle derives. And that was decided in 1973, a full five years before Califano, and a full seven years before Harris. And so the fact that that principle was available to the Supreme Court and yet not used by the Supreme Court only underscores that rational basis is appropriate. Now Moreno does say that mere cost savings cannot justify treatment under that higher standard of review. But that holding has nothing to do with this case, which is assessed not under the standard of review that was applied in Moreno, but instead under rational basis review. And in rational basis, cost savings are indeed one of the factors that the Supreme Court relied upon in Califano and then again in Harris. And those, just to underscore the point, Your Honor, are even more true now than they were back then. I think the number that Califano cited was about $300 million. And now the cost of extending the program to Puerto Rico would be something like $1.5 to $1.8 billion, according to the briefing in the district court. And so, you know, we certainly haven't walked away from any of the reasons that were given. The third one is disruption of the economy. Yes. And so, you know, the Supreme Court in Califano said, and the Supreme Court in Harris reaffirmed that that too would supply a rational basis. And so if the court were to rely on that rationale, the government certainly would have no objection. The only reason we're focusing on rationales one and two is because taken individually or indeed collectively, they underscore that Congress has a tremendous amount of discretion to draw lines when trying to draw that discretion from the rational basis standard of review, which applies. It does not, Your Honor. So if you look at the way I've read, yes, Your Honor, and you know, we don't need to get into the territories clause, because if you look at the Supreme Court's... You don't need to get into it. I certainly think it's relevant. It is relevant, Your Honor, only to demonstrate that Congress has the constitutional authority to treat the territories differently than Congress can legislate with respect to the states. But if I can direct Your Honor's attention to the Supreme Court's decision in Jefferson v. Hackney, this is at 406 U.S. 535, and the particular quote I'm about to read... It was in your brief, isn't it? And so the Jefferson case holds that so long as its judgments are rational and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket. And Jefferson further notes that Congress has wide latitude to create classifications that allocate noncontractual benefits under a social welfare program. So the particular rule that we are asking the court to apply here does not derive from anything that is particular to Puerto Rico's unique status under the United States Constitution. It instead derives from very clearly established principles of equal protection that the Supreme Court has applied in a number of different contexts. Let me ask you about that. I want to go back to the geographic distinction again. If I understood you correctly, I think part of what you were saying is that Congress has the discretion to send money to places that send money back to it. Yes, Your Honor. Okay. Are there cases that say that you should or can limit that just to income tax? I'm getting back to Judge Torreya's point, you know, that this is one geographical location. The assertion is that it sends more money to the general treasury than six other jurisdictions. So why do we then focus on income tax, which we know that Califano did, and we think that the arguments weren't made for the – I'm trying to understand. I understand the question, Your Honor. Let me try to comment in two ways. The first way is to just, again, emphasize that regardless of what you may think about Califano's holding with respect to that particular rational basis prong, it still remains a holding of the court. But setting that response aside, it makes sense that Congress would have wanted, you know, again, sketching very generally as it has latitude to do under the Jefferson standard, right? Just to say very easily that if there's an income tax exception and income tax makes up the, you know, a significant chunk of the general fund, we can just legislate with respect to whether the income tax exception is present or not. And maybe, you know, it may help the court to talk about the other part of the Social Security Act, and that's, of course, the Title II. So, you know, the contrast between the two programs and how they're applied to Puerto Rico just emphasizes, again, how, you know, correct the Supreme Court's decision was. So, you know, Title II is an insurance program, and you are eligible for Title II benefits if you have paid a certain amount in payroll taxes. Now, in Puerto Rico, of course, as I'm sure Your Honors know, the residents of Puerto Rico must pay these payroll taxes. And in consequence, Congress very rationally said, you know, we will allow these residents to access Title II benefits. And I think that even individuals such as defendants still do receive Title II benefits. Those are still dispersed in Puerto Rico. That stands in significant contrast to what Congress was doing in the part of the statute that is relevant here, the supplemental security income benefits under Title XVI of the Social Security Act. Those are not insurance-based. They don't turn on whether you have paid money in or out as an individual. Those are just benefits for persons with disabilities who meet certain income and resource thresholds. And so the fact that, you know, when there is, you know, or Congress could reasonably think, rationally think that there is a tighter connection between what the individual is paying in and what the individual is paying out, benefits are dispersed. But when there is a much looser connection between what the individuals or the residents of a particular territory or place are paying in and what are being taken out, that maybe those benefits shouldn't extend to the residents of that territory. Thank you. No problem, Your Honor. I would like to reserve three minutes for rebuttal, if possible. Thank you. Thank you. May it please the Court, I'm Armand Furet on behalf of Mr. Bayo-Modeto. This case asks whether the Equal Protection Doctrine permits Puerto Rico residents to be excluded from an otherwise uniform benefits program for disabled or impoverished individuals on the grounds that they reside outside the United States. The government initiated this lawsuit to recover payments made from my client, which it claims was improperly paid because Mr. Bayo-Modeto was living here in Puerto Rico. Individuals are eligible for SSI if they have a qualifying disability, making them unable to work, have a sufficiently low income and do not live in a U.S. territory. Here, the U.S. argues it is permissible to exclude Puerto Rico residents from the program because the federal government is given wide latitude when it comes to economic legislation. And in any event, the exclusion is rational because according to the federal government, Puerto Rico has a unique tax status. But nothing in the SSI program ties the eligibility of benefits to any provision of the Internal Revenue Code. And indeed, eligibility for the program otherwise entirely excludes consideration of payment of federal tax or history of payment of federal tax. Mr. Bayo-Modeto qualified for the program after living for many years in New York, where residents do pay federal income tax. And in any event, Congress could decide tomorrow that federal income tax should be fully extended to Puerto Rico. And we would still have Puerto Rico's exclusion from the SSI program on the government's contention that this is economic legislation and that Puerto Rico can be treated differently because it is a territory. Well, that's also, but that's the holding in Califano, isn't it? Well, Your Honor, we believe that Califano specifically addressed the right to travel. So under the court's discussion of summary dispositions in the HHS case, in which it was confronted with Baker, the court indicated that the Supreme Court, a summary disposition of the Supreme Court should be looked at on the precise issues presented and necessarily decided by those actions. So it would be one way to, we indicate in our briefing that Califano and Harris are actually not on all fours for this case. Now- Before you proceed, let me just ask a procedural question, please. The government moved to dismiss the case at some point, right? Early on? Yes, without prejudice, to be able to recommence the case in an administrative proceeding. And did you object? Yes. And that was the reason you objected? Correct, because we expected that we would be back in federal court on the constitutional issue. Okay. Now, disparate treatment of a specific group that has been historically discriminated against should automatically result in heightened scrutiny. And here, of course, we note the obvious that Puerto Rico's population is 99 percent Hispanic and has experienced a long history of discrimination. And the SSI program's exclusion is targeted at a politically powerless group. A discriminatory purpose can be inferred from the totality of the relevant facts, including that the law bears more heavily on the historically disadvantaged group. Under the government's view, Congress has plenary power over Puerto Rico, period. According to the government, Congress is permitted to include or exclude Puerto Rico residents from federal programs at its full discretion with only rational basis review. And the government, of course, is relying on Califano and Harris. But these cases cannot stand for the proposition that any disparate treatment of Puerto Rico or its residents can be subject only to rational basis review. If that were the case, even disparate treatment clearly based in part on racial animus would be subject only to rational basis review, so long as ultimately cast in geographic terms. That treatment would also be defensible under the same tax-based pretext that the government is advancing here. Geography cannot simply whitewash discrimination in this way. Puerto Rico's territorial status cannot circumvent an inquiry into why its residents are treated less favorably than other Americans. And in any case, as I indicated, these cases are not dispositive of the issues here. As I indicated, the Califano case addressed specifically an individual's right to travel, and Harris addressed a block grant program. So neither analyzed whether denying individual benefits could survive an equal protection challenge where the exclusion was based on racial animus and political powerlessness. Excluding Puerto Rico is not even rationally related to a legitimate government end here. This program is meant to assist the most needy, not to avoid the most needy depending on where they reside. So if we look at the justifications offered by the government, first, that Puerto Rico residents do not contribute to the public treasury. This constitutional inquiry about the SSI exclusion should not hinge on unrelated provisions of the federal code that can readily be altered and to which the statute itself makes no reference. Congress can and does change the tax treatment of Puerto Rico at its pleasure, as it did in 1996 when it eliminated Section 936, which of course has had significant impact to Puerto Rico. Furthermore, as Judge Trujillo noted, it's just false this notion that Puerto Rico residents do not pay federal tax. They do pay federal tax, including import taxes, commodity taxes, payroll taxes, and income tax on money earned outside Puerto Rico and others. And of course, residents who derive their income from sources outside the island and who are federal employees, including members of the armed forces, do pay federal income tax. So is there a case that says that in a case like this, we need to consider all the sources of revenue? Conversely, is there a case that says that it would be rational for Congress to just base it on income tax? Well, the thing is that Congress did not base the eligibility requirement on payment of tax at all. So only tax, in this instance, the look at what the territorial tax status is the only, Puerto Rico is the only jurisdiction and the territories are the only jurisdictions in which that analysis was done. There was no analysis to determine the tax status of any other jurisdiction or whether jurisdictions were net contributors to the general treasury. Right. And I'm trying to figure out if it was rational to do that. And I'm trying to get some help on, you know, tell me some cases to read. Well, it could be rational to do that. But we think that in this instance, because the effect is on a group that has been historically discriminated against and a group that is politically powerless, we think that that requires then a more searching inquiry. Yeah, but I understand that part of your argument, but you're not suggesting that you need that. I mean, even on rational basis, you've got an argument, right? Just on rational basis? Yes, because in fact, this is not a consideration made for any other individuals. Actually, the language used, I'm trying to find it, naming the three reasons is because the unique tax status of Puerto Rico, its residents do not contribute to the public treasury. They don't actually save income tax. Correct, Your Honor. And in fact, that's why we say it's entirely false, because Puerto Rico does contribute to the public treasury. Is the record sufficiently developed for us to make a decision? Yes, we believe it is. And based on the fact that this exclusion imposes a disadvantage and a separate status, specifically on residents of the territories. We think that's, I mean, there's a concrete controversy here in which the government is seeking repayment of amounts that were paid to my client. I guess I'm trying to figure out, does the record, as it stands now, contain information about money Puerto Rico pays into the treasury? Yes, the record does include that. The other thing that I'll note is that significant portions of the populations in the states, of course, do not pay federal income tax. So as the Tax Policy Center has noted in 2018, over 44% of all U.S. residents paid no federal income tax. So the idea that participation in the program should be dependent on whether neighbors in Puerto Rico have paid federal income tax versus other jurisdictions. Again, we think is an improper disadvantage towards residents of Puerto Rico. And the government also argues that the cost of including Puerto Rico would be too great. And this argument does not pass a rational basis review because the amount the government has quantified an extra 1.5 to 1.8 billion in a $55 billion program would basically mean an incremental 2.75% increase of funding to the program in order to include Puerto Rico. And it certainly then doesn't justify the exclusion of a historically disadvantaged and politically powerless group. If Congress were concerned about the cost of the program, the solution would be to reduce benefits across the board or to improve the program deficiency, not to single out residents of Puerto Rico for this disparate treatment. And the third reason, and Judge Torolla asked about the third reason that has been offered in the past, that including Puerto Rico might disrupt the Puerto Rican economy. This basis, of course, cannot seriously be considered and the government doesn't even try. Considering that Puerto Rico's economy is disrupted, disrupted by its disparate treatment in federal programs and disrupted by federal laws that Congress enacts without Puerto Rico's participation. And of course, disrupted through the inability of Puerto Rico residents generally to engage in the political process at the national level. The government contends that Congress was acting under the territorial clause, but what needful rule or regulation was it enacting regarding governance? So in Califano and Harris, the Supreme Court simply assumed that Congress was acting under the territorial clause. But Congress was, of course, not acting under the territorial clause when it enacted the SSI program. It was acting under its Article I powers in order to enact a national program. And when doing so, it should act even-handedly. And it is precisely this point that Congress does not permit Congress to use its power disparately based on political or suspect classifications that must be addressed here. Here, Congress was clearly acting for the nation as a whole when it enacted the program. This is a national program intended to deal uniformly with the qualifications for and the provision of aid for people who are disabled or elderly and unable to support themselves to a federal minimum standard. The only basis by which the government might arguably maintain that Congress has greater power in exercising its Article I powers when it comes to the territories is, of course, the insular cases. And the government would have to concede that New York residents could not be excluded from a national program. They certainly wouldn't stand for it and they use the political processes available to them. Here, Congress can treat Puerto Rico residents differently only if there's a reference to the insular cases. And that is exactly what Califano and Harris apparently hold, stating in a footnote that rational basis review is the proper standard based on the insular cases. I'll note for the record that in Torres v. Puerto Rico, Justice Brennan argued that any limits based on the insular cases to the basic rights granted by the Constitution were anachronistic in the 1970s. So what about today? Only if the insular cases are still valid today must the court then resort to a rational basis review of Puerto Rico's exclusion of the SSI program. So we're back again to the fact that Puerto Rico residents are a discrete insular minority and politically powerless. Facially excluding such a group cannot withstand strict or heightened scrutiny. And if Califano and Harris, and generally the insular cases, stand for the proposition that Congress has plenary power beyond the limits established in the Constitution when Congress was dealing nationally vis-a-vis the territories, then these cases are indeed anachronistic. Thank you. Your Honors, I'd like to use the limited time available to address two quick points. The first has to do with how best to interpret the holdings in Califano and Harris, and the second has to do whether those holdings can be distinguished. With respect to the first point, the Supreme Court in both of these decisions have made quite clear that the statute is constitutional under the sort of challenge that the defendant has brought. We know this because the first question to ask whenever any equal protection claim is brought is what the applicable tier of scrutiny is. Harris, as this court explained in Rios-Rivera, very clearly answers that question, and that question is rational basis review. And so under rational basis review, the next step is whether the statute is rational. And all that is required is for the courts to come up with just one basis as to why Congress might have wanted to make the classification that it did. And Califano clearly says that there are multiple reasons that are rational and not invidious for why Congress may have wanted to do exactly what it did here. So applying Harris and Califano compels the conclusion that the statute is rational and that the challenge is constitutional. Now, the only question that remains is whether the court can ignore those controlling holdings. And, you know, what we heard from the other side was that, you know, those holdings were ill-conceived. But that doesn't give the court license to reconsider what the Supreme Court has already previously held because nothing of relevance has changed. With respect to the first rational basis that the Supreme Court articulated, the tax exemption, which was, although kind of glossed over in Harris, mentioned directly in Califano in the footnote, which does talk about Puerto Rico's unique tax status, that tax status remains in effect today. And with respect to the second- You're talking about contributions to the treasury, isn't it? So it's talking about that, but that's only the second half of the sentence, Your Honor. So if you go to footnote 7 on page, I think, 908 of the reporter that I have, it says- Seven? Yeah, footnote 7. It says, first, because of the unique tax status of Puerto Rico, its residents do not contribute to the public treasury. Now, what that- That's not talking about income tax alone. It's talking about all contributions. No, it's the first part of that sentence, Your Honor, refers specifically to the income tax exclusion that we were discussing. The unique tax status of Puerto Rico. Why is that only relevant to income tax? It's not only relevant to income tax, Your Honor, but no one can dispute, and indeed, there is no dispute, that Puerto Rico back then, just as now, had a unique tax status, right? It's not just regarding income tax? No, Your Honor, but the fact remains that what the Supreme Court held in Califano and reaffirmed in Treasury, it does- On purpose of argument, I will even accept your definition of what unique tax stature means. The fact is that it says in the part you claim changes is, its residents do not contribute to the public treasury. Not only do the residents here contribute to various- by way of various taxes, they even contribute income taxes also. So, again, Your Honor- So, that's not correct. Again, Your Honor, so what the Supreme Court said, you know, the Supreme Court did not march into every single one of the applicable income tax laws that Puerto Rico, you know, the residents of Puerto Rico have to follow. And the reason the Supreme Court didn't do that is because under rational basis review, Congress did not need to think about the question at that degree of specificity. I want to underscore that under the undisputed controlling standard of review, which is- I didn't quite follow that point. If the point of the footnote is to say that residents of Puerto Rico do not contribute, and we know that that is patently false, then why wouldn't Congress be required to dig into it more? Two reasons, Your Honor. So, first, again, you know, we take a different view of what that footnote means. We think the footnote is better understood to refer to the unique income tax status of I take it from Your Honor's questions that you disagree with that premise. There's two things I would say in response to that. The first is that it remains the controlling holding of the United States Supreme Court and therefore binds this court. The second is, I'll refer the court back to my discussion of the Jefferson case, which has to do with the allocation of social benefits legislation and the benefits that, you know, Congress is voluntarily providing. And as to that, Congress does not need to engage in as detailed an inquiry into what taxes may or may not apply to Puerto Rico. You know, just go through every page of the income tax code in order to figure out what might or might not apply to Puerto Rico. All that is required is for Congress to have just a general sense, entirely separate from whatever the empirical data may show, that the particular classification makes sense. And what's your best authority for that statement? The best authority for that statement, if you'll bear with me, Your Honor, comes from the Supreme Court's decision in Beach Communications. So at page 313 of Beach Communications, that's 508 U.S. at 313, the Supreme Court holds expressly that, quote, a legislative choice may be based on rational speculation unsupported by evidence or empirical data. And that point is underscored by how the Supreme Court has deployed rational basis review in the past. If you look at Califano and Harris, and indeed if you look at this Court's decisions applying rational basis review, at no point does the Court engage in the sort of evidentiary inquiry that Your Honors are asking me about. Instead, the Court, acknowledging that Congress has tremendous latitude when making social have had a rational reason to do so. And here... Well, you're looking at footnotes. Yes. Footnote 4, which makes reference as its basis of several of the insular cases, starting with Moss Lack v. Puerto Rico, Dorby v. United States, and the leading one, Downs v. Bidwell. So I have a feeling that insular cases have more to do with this case that you have... I understand your position, but I... And your position seems to argue... I understand Your Honor's point. The way the Supreme Court has described the holdings of the insular cases in cases such as Sanchez Valle and in Bumerian is that those cases go to a very narrow question, whether a certain constitutional right may be asserted by a particular individual. And again, I want to underscore that at no point has anybody disputed, much less the government, that the residents of Puerto Rico are entitled to invoke the protections of the equal protection guarantees in the United States Constitution in exactly the same manner as the residents of the 50 states and of the District of Columbia. You know, I don't know if I should even ask this question, but in studying this case, I thought, what if they passed a law like this applicable to only, say, the residents of Harlem because they conclude that the residents of Harlem can't afford it, don't pay income tax the way the rest of the citizens in New York do, or that it would cost too much money to have this program applied to them? Would they be entitled to, what kind of standard of review would we be applying to that case? So the short answer, Your Honor, is I don't know because that hypothetical is quite different from what we have here. Remember, this statute doesn't have to do with the territory. Harlem is a geographical area. Yes, I understand, Your Honor. So if I could just walk through how I would understand the analysis, the guiding decision would be the Supreme Court's decision in Arlington. And in Arlington, the Supreme Court says this is a facially neutral classification. It refers to Harlem. Now we're going to walk through the Arlington Heights analysis to see whether we can look beyond the classification that Congress made and figure out whether there was something invidious and smoke out the invidious discrimination. What we're saying here and what the other side has failed to grapple with is that applying that very same Arlington Heights framework to the particular statute challenged in this case does not result in the conclusion that the particular statute, which is, again, facially neutral, was motivated by any sort of discriminatory animus. As a vince— But not unless you look into the background. No, Your Honor, because the Insular Cases do not supply the relevant background for the enactments that Congress makes. Thank you. Of course, Your Honor. Thank you. Thank you all.